WITHERSPOON & LANE v. TEXAS PACIFIC RAILROAD CO.

48 | 309
89 | 380

1. STATUTE CONSTRUED—SOLD-OUT RAILROAD.—Paschal's Dig., 4916, relating to the administration of the assets of sold-out railroad companies, construed.
2. SAME.—The trust cast by the statute upon the directory existing at such sale, is to be exercised collectively, and in their aggregate capacity, and not as individuals.

3. SAME.—The powers and responsibilities given and reposed upon such trustees of sold-out companies, by the statute, could not be thrust upon them merely by reason of their being directors of the company when sold out. They must have accepted the trust, before they can be held responsible for the discharge of the duties of trustees.

4. SAME—VOID JUDGMENT.—A judgment founded upon service of citation upon two of such trustees, where there were ten, the presumption being as great that all have accepted and are competent to act as the two served, (there being no evidence of acceptance of the trust by any,) will not warrant the seizure and sale of property not in the possession or under the immediate control of the trustees served with citation.

5. SAME—TRESPASS TO TRY TITLE.—Plaintiffs in trespass to try title exhibited, as one link in their chain of title, an execution sale under a judgment rendered upon service of citation upon two out of ten persons elected directors of the railroad company an hour and a half before the sheriff's sale under execution of the road, road-bed, &c., there being no evidence that said persons ever acted as directors or trustees, the property not being under the control of the parties served with citation : *Held*, That the levy and sale under such judgment passed no title to the land.

APPEAL from Harrison. Tried below before the Hon. A. J. Booty.

The facts are given in the opinion.

*McKay & Mabry* and *George Lane*, for appellants.—Upon the sale of the road-bed, track, franchise, &c., on the 5th of May, 1868, the directors of the sold-out company at the time of the sale became, under the statute, the trustees of the creditors and stockholders of the sold-out company, vested with full powers to settle the affairs of the sold-out company, &c. "And the persons so constituted trustees shall have authority to sue by the name of the trustees of such sold-out company, and may be sued as such, and shall be jointly and severally responsible to the creditors and stockholders of such company, to the extent of its property and effects that shall come to their hands." (Paschal's Dig., art. 4916.)

The directors of the sold-out company, at the time of sale, were a class of persons constituted by law private trustees,

to execute a private trust. "In private trusts, the beneficial interest is vested absolutely in some individual or individuals who are, or within a certain time may be, definitely ascertained." (1 Perry on Trusts, sec. 384.) In this case, the stockholders and creditors were, or could be, definitely ascertained.

If a power be given to a class consisting of several persons, as to "my trustees," "my sons," (in this case to the directors,) and not to individuals by their proper names, the authority will exist in the class so long as the plural number remains. (1 Perry on Trusts, sec. 294; Davoue v. Fanning, 2 Johns. Ch., 254,—where one executor executed a power which was held to be vested in the executors.) Two or more of these trustees could have sued for, recovered, and reduced to possession the assets of the sold-out company; for their recovery and possession would be joint and several, as was their responsibility. Payments and disbursements of the trust funds, if made by less than a majority of the trustees, and made within the scope of their powers,—in other words, if made under such circumstances as would have been valid if made by the whole number,—would certainly have been valid. Who could have complained? Or for what could complaint have been made?

These trustees, under the statute last quoted, may be sued as such. The term "sued," used in the statute, is general, and embraces suits upon every cause of action that may exist against them as trustees. J. F. Witherspoon, as administrator, &c., had a cause of action against the Southern Pacific Railroad Co. before the sale, which was not extinguished by the sale, but survived against—whom? Only against the trustees as such. They could be sued, and they only, to enforce his demand. The same statute provides that suits pending against the company at the time of the sale shall not abate, but shall be prosecuted against the trustees, and prosecuted to a legitimate result, judgment, and execution.

The inquiry then recurs,—Who were necessary parties to a suit against said trustees as such?

As a general rule, all parties interested in the subject-matter of the suit must be parties, &c.   (Story's Eq. Pl., sec. 76*a*.)

But the general rule as to parties seems not to be founded on any positive and uniform rule.  (Story's Eq. Pl., sec. 76*c*.) There are many exceptions to the rule.  (Id.)  "And all the exceptions will be found to be governed by one and the same principle, 'which is to accomplish the purpose of justice between all the parties in interest.'"  (Id., sec. 77.)  One exception is when the parties are without the jurisdiction of the court, &c.   If the parties are out of the jurisdiction, the court will proceed without them.  (Id., sec. 78.)  When one partner is out of the jurisdiction, the court will decree against the partners who are within the jurisdiction. ·

When proper and necessary parties out of the jurisdiction can be dispensed with, then their interest will not be prejudiced by the decree, &c.   When they are merely passive objects of the judgment of the court, or their rights are merely incidental to those of the parties, then, inasmuch as a complete decree may be obtained without them, they may be dispensed with.   (Story's Eq. Pl., sec. 81; Adams' Eq., 720.) If the disposition of the property in controversy is in the power of the other parties, (viz., those before the court,) the court may act upon them, and through them upon the property.   (Id., sec. 87.)

When there are many persons defendants whose interests are of a common character and responsibility, it is sufficient that such a number of them are brought before the court as will represent the interests of all.   (Story's Eq. Pl., sec. 116.) So when appointees are numerous, it has been held, that they may be represented, as defendants to a suit, by some on behalf of the rest.   (Story's Eq. Pl., 19; Id., sec. 135*a*; Adams' Eq., 714.)

And it is held, when a person has a right against several individuals who are liable to common obligations, a bill may be filed against some on behalf of all, provided such number

be brought before the court as will fairly represent their interests. (Adams' Eq., 718.)

Actions may be prosecuted to judgment against one executor or administrator, when there are others not served, or out of the jurisdiction of the court, and bind the estate; or when both have been sued, and service on one, and *non est inventus* as to the others, and the judgment is good against both. (2 Wms. Ex., 1647.) These general principles fully support the validity of the judgment of the County Court, so far as the question of parties defendants are concerned. The trustees were a class of persons for the execution of a private trust; their interests were wholly common and identical; their common purpose was to protect the trust fund in their hands, and to see to its proper application. There were enough of them before the court to effect these purposes, and doing that, the full ends of justice were attained. And all the rules upon the subject of parties to suit were fully answered, and not one violated.

But need we invoke these general principles to support our judgment of the County Court in this particular ?

The statute itself furnishes a rule that controls. These trustees are jointly and severally responsible, to the extent of the trust property which shall come to their hands. (Paschal's Dig., art. 4916.)

And if they are jointly and severally liable, can they not be sued jointly or severally ? Nor are we required to rely upon this rule.

All those trustees were joined in said suit as defendants, and were sued as such trustees, in compliance with the strictest rule insisted upon as to joinder of all parties. But the plaintiff, as he was justified in doing by our statute, discontinued as to the eight defendants not served, and proceeded to judgment against those two before the court. (Paschal's Dig., art. 1148.) This statute recognizes the right of the plaintiff to enter a discontinuance as to defendants not served in all suits, no matter whether they be on tort or contract, or

whether the obligation be joint, on which all the obligors must, at common law, be sued jointly.

The only test is whether the defendants have or have not been cited in conformity with law. There are but two exceptions, and they are prescribed by the statute. (Forbes v. Davis, 18 Tex., 274.) Many other cases, in our own reports, might be cited in support of the same proposition. What, we ask, is there in the case in the County Court, under discussion, to take it out of the statutory rule of discontinuance, and the cases above referred to so fully discussing that rule?

The charge of the court requires at least a majority of the trustees to have been before the court, and judgment against them; otherwise the judgment is invalid. We are unable to find any authority to support such a proposition, as applicable to the facts of this case. In cases of public trust, majorities may execute the trust. (2 Story's Eq. Jur., sec. 1284c; 1 Perry on Trusts, sec. 413,—where it is announced, that "in case of a public trust, where there are several trustees, the act of the majority is held to be the act of the whole number.") Trusts for charitable uses are public trusts, as gifts for the relief of the poor, the sick, the afflicted, and for public convenience, benefit, utility, &c. (2 Perry on Trusts, sec. 687.) But that is not our case. Particular individuals were the beneficiaries in our case, and here, a private trust, as said before. We apprehend the court below must have misconceived the character of the trust, and submitted the law applicable to public instead of private trusts. Upon these views, we respectfully submit, the court erred in instructing the jury, that in order to a valid judgment, the said trustees—implying all of them, as the charge does, or, at least, a majority of them—must have been before the court, and judgment rendered against them.

Assuming, therefore, that the judgment of the County Court is a good and valid judgment, so far as parties defendant are concerned, is it, in other respects, sufficient? The judgment of the County Court shows that the plaintiff ap-

peared; that the defendants, except those therein named, had been regularly served with process, and discontinuance as to the eight trustees not served; judgment by default as to those served, with writ of inquiry, and verdict of a jury, and judgment against the defendants served, &c., for the amount of the finding of the jury, and cost of suit. While the judgment is not as full as it may have been, and possibly must be, before execution could issue, yet, by reference to the whole record of the case, these defects, if any, were cured. The petition and answer are, in our practice, as much a part of the record as the judgment itself. The bill, answer, and other pleadings, together with the decree, constitute what is properly considered the record. (Hamilton v. Ward, 4 Tex., 360; Freem. on Judg., secs. 45, 154, and note; Wilson v. Collins, 11 Humph., 189; Fowler v. Doyle, 16 Iowa, 534; Foot v. Glover, 3 Blackf., 313.) And that principle announced by Judge Wheeler in 4 Texas has never been questioned by our courts from that day to this. Taking, then, the petition in the case, in connection with the judgment, we have a perfect judgment. And so the court below held, upon that subject.   *   *   *

*F. B. Sexton & Wm. Sexton*, and *Turner & Lipscomb*, for appellee.—Both firms filed elaborate arguments upon the law and facts. Their length prevents insertion. The character of the discussion prevents an abstract. The views sustained are substantially adopted in the opinion.

MOORE, ASSOCIATE JUSTICE.—This suit was brought by appellants, in the District Court of Harrison county, against appellee, to try title and recover possession of a lot and several blocks of land in the city of Marshall, which appellants claim to have acquired by purchase at constable's sale, under writs of *venditioni exponas*, on a judgment of the County Court of said Harrison county in favor of John F. Witherspoon, administrator of N. W. Eams, against the Southern Pacific

Railroad Company, as a sold-out company, in a suit brought against the trustees of said sold-out company, as appellants maintain, under and in pursuance with the provisions of section 9 of the statute of December 19, 1857, entitled "An act supplementary to, and amendatory of, an act to regulate railroad companies," approved February 7, 1853.

As appellants do not claim or pretend to hold any title to the land in controversy, except as purchasers at said constable's sale, they frankly admit, if any of the numerous exceptions taken by the appellees in the court below to the validity and sufficiency of this title should have been sustained, they have no sufficient ground to ask for a reversal of this judgment; for, evidently, if they acquired no title as purchasers at this sale, whatever errors may have been committed by the court, worked them no injury, and afford no ground for protracting a bootless litigation.

The only material question, therefore, for our determination is,—Did appellants acquire a valid title to the lot and blocks of ground for which they sue, by their purchase at the sale made under authority of this judgment of the County Court of Harrison county against the Southern Pacific Railroad Company as a sold-out company?

In considering this question, we shall take it to be an admitted fact—at least for the present disposition of the case—that both parties deraign title, as appellants claim, from said Southern Pacific Railroad Company; and hence, if appellants acquired the title which was vested in said company previous to the alleged sale of its franchises and chartered rights and privileges, the judgment, in the aspect in which it is being now considered, is erroneous.

It is shown, by the record, that a meeting of the stockholders of said Southern Pacific Railroad Company was held in the city of Marshall, Texas, on the 5th of May, 1868; that at said meeting the following-named persons were elected directors of said company, to wit: R. B. Hall, Wm. Garvin, Wm. A. Hauser, John S. Long, Joseph Monks, Charles Cobb,

W. C. Hall, Thomas Coleman, R. W. Loughery, and Martin Polly; that only two of said parties—R. B. Hall and R. W. Loughery—were present at said meeting, or, so far as is known, were at the time within the State of Texas. All of them, except Loughery and Hauser, are shown to have been non-residents of the State. The parties thus elected by the stockholders never met and organized as directors of said company; and it does not appear that they ever transacted any business whatever, either as directors or as trustees of said company, or even claimed the right to do so.

On the same day on which this election was held, and some hour or hour and a half thereafter, "the road-bed, track, franchises, and chartered privileges" of said Southern Pacific Railroad Company were sold by the sheriff of Harrison county, in pursuance of levies previously made thereon, by virtue of twenty-seven executions in his hands, issued on judgments theretofore rendered in favor of different parties against said company. At this sale, said R. B. Hall, one of the parties elected as a director by said stockholders, became the purchaser of said property, franchises, and chartered privileges.

In September, 1868, John F. Witherspoon, as administrator of N. W. Eams, deceased, filed a petition in the County Court of Harrison county against said parties, who were elected directors of said company on said 5th of May, as previously stated, as trustees of said Southern Pacific Railroad Company, as a sold-out company, for the recovery of a debt alleged to be owing by it to the estate of his intestate.

None of the alleged trustees of said sold-out company, with the exception of R. B. Hall and R. W. Loughery, were cited to answer the plaintiff's petition, and no effort whatever seems to have been made to have any of the others given notice of the suit. And although they were made parties in the first instance, at a subsequent term of the court the plaintiff dismissed as to the trustees not served, and Hall and Loughery not appearing, took judgment against said sold-out company by default.

It is evident, from this recital, that unless said Southern Pacific Railroad Company could be legally sold out under execution, as was attempted to. be done, the judgment in favor of Witherspoon is a nullity; or if said sale was valid, unless the parties elected at said stockholders' meeting were the directors of 'said company at the date of said sale; or if they were, unless a valid judgment can be rendered against a sold-out company, where there are ten trustees, and only two of them are before the court, appellants, by their purchase under said judgment, acquired no title to the property for which they sued. It is only necessary, in the opinion of the court, to consider the last of these propositions.

The section of the statute under which appellants insist that Witherspoon was authorized to sue said trustees, reads as follows:

"Whenever a sale of the road-bed, track, franchise, and chartered powers and privileges is made, as hereinbefore provided, (unless other persons shall be appointed by the Legislature, or by some court of competent authority,) the directors or managers of the sold-out company at the time of the sale, by whatever name they may be known at law, shall be the trustees of the creditors and stockholders of the sold-out company, and shall have full powers to settle the affairs of the sold-out company, collect and pay the outstanding debts, and divide among the stockholders the money and other property remaining in their hands, after the payment of the debts and necessary expenses; and the persons so constituted trustees shall have authority to sue by the name of the trustees of such sold-out company, and may be sued as such, and shall be jointly and severally responsible to the creditors and stockholders of such company, to the extent of the property and effects which shall come to their hands; and no suit pending for or against any railroad company at the time the sale may be made of its road-bed, track, franchise, and chartered privileges shall abate, but the same shall be continued in the

name of the trustees of the sold-out company." (Paschal's Dig., 4916.)

The statute, in thus providing for the settlement of the affairs of sold-out railroad companies, was enacted on the supposition that the existing directory were more familiar with the business of the company, and, if not superseded by legislative or judicial action, could more readily and satisfactorily wind up and adjust their unsettled business than any other parties. They are designated trustees, because, in discharge of the duties imposed upon them, they do not act under authority of the franchise and charter of the company, but merely as the representatives of its stockholders and creditors; while the purchaser and his associates, by virtue of the franchise and chartered rights and privileges acquired by them, could elect directors for the company. To have used the same name for the designation of these different bodies, would lead to confusion. The language of the statute plainly indicates that the power conferred upon them as trustees is to be exercised collectively, and in their aggregate capacity as a body, and not as individuals. To give to each of the directors distinct and independent power to wind up and settle the business of the company, would evidently lead to confusion and a conflict of action, which would be injurious to the interest of the parties for whose benefit they are made trustees; nor would it be consistent with reason or justice that the trustees should be made jointly and severally responsible for property coming into their hands, unless it come to them in their collective capacity.

Certainly, a valid judgment could not be rendered against them in their aggregate capacity, as a body of trustees, unless they were all parties to the action, and were all individually or collectively, as an aggregate body, cited to appear and answer to the plaintiff's demand. Evidently, the aggregate body, or board of trustees, cannot be bound by a judgment against a single trustee. If a suit against an individual trustee can be maintained, it will unquestionably only bind him;

or, at most, such a judgment could only be enforced by the sale of property of the company in his hands. In this case, it is shown that no property of the company came into the hands of the supposed trustee who was named in the execution under which appellants purchased.

It seems to us quite evident, that the powers and responsibilities given and imposed upon trustees of a sold-out railroad company, by this statute, could not be thrust upon them merely by reason of their being directors of the company when sold out; and, therefore, it must be shown in some way that they have accepted the trust thus conferred upon them, before they can be held responsible for the discharge of the duties of such trustees. The most reasonable and appropriate manner of their doing so, would appear to be by the organization of the board of directors as trustees. If this was done, possibly the provisions of the statute, providing for service of process upon the corporation before it was sold out, might be found sufficiently comprehensive to bring before the court the trustees, in their aggregate capacity, as representatives of the stockholders and creditors of the corporation. They are apparently authorized to act, in a certain sense, in a *quasi* corporate capacity. But it is unnecessary, at present, to decide whether this is so or not, or to determine how such trustees must be served. All that it is necessary for us to say in this case, and this we unhesitatingly do, is that a judgment founded upon service on only two of the trustees, where there are ten, and the presumption is as great that all have accepted and are as competent to act as the two served, will not warrant the seizure and sale of the property of the company, not in the possession or under the immediate control of the trustees who were cited.

There is no error in the judgment of which the appellants can complain, and it is affirmed.

AFFIRMED.