### HOGSETT et al. v. DALLAS MORTGAGE SECURITIES CO. et al.

#### No. 12523.

Court of Civil Appeals of Texas. Dallas.

Oct. 16, 1937.

Rehearing Denied Nov. 20, 1937.

Russell Allen, of Dallas, for appellants.

McCombs, Andress & Johnson, of Dallas, for appellees.

LOONEY, Justice.

This appeal is from an order of the trial court sustaining a general demurrer to appellants' (plaintiffs) petition and dismissing their suit. The material facts alleged are these: That on December 16, 1936, the Dallas Mortgage Securities Company, a Texas corporation having its domicile in the city of Dallas, was dissolved by the voluntary action of its stockholders and, no receiver having been appointed, its president and directors became a board of trustees with authority to settle the affairs of the corporation, as provided by article 1388, R. S. The board was composed of Wm. M. Alexander of Dallas county, president of the company, and the following directors: Joe B. Hogsett of Tarrant county, J. Josey of Bexar county, W. L. Roots of San Patricio county, F. B. McKie of Navarro county, and J. C. Gar-

rison, George A. Ripley, and H. G. McLean of Dallas county. These corporate officials accepted the trust imposed by statute and, with the exception of Mr. McKie, actively participated in administering the trust up to the institution of the present proceedings. Prior thereto, by letter dated February 2, 1937, addressed to the other trustees, Mr. McKie tendered his resignation as trustee and thereafter ceased to act in that capacity. At the time of its dissolution, the corporation was free of debt, and owned assets of the estimated value of over $47,000.

On February 27, 1937, three of the trustees (appellants), to wit, Hogsett, Roots, and Josey, in the dual capacities as trustees and as stockholders of the dissolved corporation, filed their petition in the court below, bringing in as defendants the dissolved corporation and the other trustees, alleging the facts as above substantially stated, and in addition that, "These plaintiffs would show that by reason of, among other things, the distance of their homes from Dallas County, Texas, where the principal part of their duties as trustees is obliged to be performed and the necessity for frequent journeys to the City of Dallas in the performance of their said duties, and trust imposed upon them as aforesaid is onerous and burdensome and that their continuing as trustees in liquidation of said dissolved corporation will be an undue burden upon them and each of them. These plaintiffs say that by reason of such burdens, they no longer desire to continue as such trustees and it is their purpose by this petition to be relieved of the duties and obligations imposed upon them as aforesaid by law." They also alleged that, because the remaining trustees could not act as a body, the trust was in danger of failing unless a receiver was appointed by the court to execute the trust; concluding as follows: "Wherefore, the plaintiffs pray that the defendants be cited to appear and answer herein; that the court forthwith appoint a receiver of Dallas Mortgage Securities Company and of its properties of every kind and character and wherever situated; that such receiver in all things supersede the Trustees in Liquidation, and that such receiver be empowered and directed under the orders of the court to immediately continue the liquidation of Dallas Mortgage Securities Company and of its properties and continue such liquidation until the same is fully completed. That after such complete

liquidation and upon final hearing hereof, these plaintiffs and all other stockholders in said corporation have and recover their just and proportionate part of the proceeds from such liquidation. That all orders and decrees necessary and proper to empower said receiver to properly function be entered * * * and for such other orders and decrees as the court may deem necessary and proper, and for such other and further relief, legal and equitable, general and special, to which the plaintiffs may be justly entitled, including all costs of court."

The other trustees, to wit, Alexander, Garrison, Ripley and McLean, for themselves and for the dissolved corporation, acquiescing in appellants' allegations, answered that: "The defendant trustees herein say that they are not unwilling to continue to act as such trustees, but they acquiesce in the allegations of the plaintiffs' petition requesting that a receiver be appointed to supplant all the trustees. Wherefore, these defendants pray that the application of the plaintiffs for the appointment of a receiver be in all things granted." Defendant McKie, also acquiescing, alleged that: "On Feby. 2, 1937, this defendant resigned as director of said corporation and as a Trustee in Liquidation, and by letter of such date advised the other Directors and Trustees of his resignation, and since such date has not acted either as Director or as Trustee. Wherefore, comes F. B. McKie and prays that the court render judgment recognizing his resignation as Director and Trustee as of the date aforesaid, and in the alternative, prays that if this attempt to resign as director and trustee as aforesaid was not effective as a resignation, then that he be permitted at this time to resign as director and trustee, and be discharged of all further responsibilities and duties incident to such offices."

On March 1, 1937, the court appointed H. G. McLean receiver, with authority to liquidate the affairs of the corporation; the appointee immediately qualified, entered upon the discharge of the duties of the office, and on March 10, 1937, filed an inventory and appraisement of the assets and properties belonging to the dissolved corporation, showing: Cash $732.94; furniture $25.25; land bank stock $1,299.26; notes secured by liens on land in San Patricio and Dallas counties, aggregating $11,700; a farm of 450 acres in Wilson county, Tex., of the estimated value of $29,536.03, and

farming tools, implements, mules, harness, etc., of the estimated value of $2,809.61, and a lot in the city of Dallas of the estimated value of $603.51; also showing certain matters in liquidation of an undetermined value.

After all these proceedings, appellees H. W. Ferguson and Searcy M. Ferguson, stockholders of the dissolved corporation, being permitted, intervened for themselves and on behalf of other stockholders of the dissolved corporation similarly situated, urging among other defensive matters, a general demurrer to plaintiffs' petition, which, on hearing, the court sustained, and, as plaintiffs declined to amend, their suit was dismissed and the former order appointing the receiver was set aside, from which plaintiffs appealed.

The first question for consideration involves the right of the trustees to resign and be relieved of the duties and responsibilities thrust upon them by statute. The statute in question is article 1388, R.S., reading: "Upon the dissolution of a corporation, unless a receiver is appointed by some court of competent jurisdiction, the president and directors or managers of the affairs of the corporation at the time of its dissolution shall be trustees of the creditors and stockholders of such corporation, with power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them after paying all just and reasonable expenses; and for this purpose they may in the name of such corporation, sell, convey and transfer all real and personal property belonging to such company, collect all debts, compromise controversies, maintain or defend judicial proceedings, and exercise full power and authority of said company over such assets and property. Said trustees shall be severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands."

It is obvious, we think, that, at the beginning, the officers of the dissolved corporation could have refused to act as trustees, there being nothing of a contractual obligation existing, or any law compelling them to accept. Construing similar provisions of a statute providing for settling the affairs of sold-out railway companies, the Supreme Court, in Witherspoon v. Texas Pacific R. R. Co., 48 Tex. 309, 320, had this to say: "It seems to us quite evident, that the powers and responsibilities given and imposed upon trustees of a sold-out railroad company, by this statute, could not be thrust upon them merely by reason of their being directors of the company when sold out; and, therefore, it must be shown in some way that they have accepted the trust thus conferred upon them, before they can be held responsible for the discharge of the duties of such trustees. The most reasonable and appropriate manner of their doing so, would appear to be by the organization of the board of directors as trustees. If this was done, possibly the provisions of the statute, providing for service of process upon the corporation before it was sold out, might be found sufficiently comprehensive to bring before the court the trustees, in their aggregate capacity, as representatives of the stockholders and creditors of the corporation."

As the statute in question makes no provision for the resignation of trustees, or for the filling of vacancies caused by death or otherwise, by analogy, the rules of equity should, in our opinion, control. So in the situation presented, we think appellants had the right to appeal to the court, asking to be discharged and submitting the administration of the trust estate to its jurisdiction, as was done in the instant case. See 65 C.J. p. 612 § 433. It is held in some jurisdictions that a trustee may tender his resignation to the court and apply for release on the ground of his unwillingness to act further; in other jurisdictions, it is held that the acceptance of the resignation of a trustee is not a matter of course, but that some ground for the discharge, other than the mere wish of the trustee to be relieved, should be shown, Id., § 430, and authorities cited. Be that as it may, in the instant case, we think the grounds alleged by appellants for discharge (heretofore set out) were sufficient to justify the court in discharging them, even if under the circumstances they were required to show good cause.

As shown, Mr. McKie tendered his resignation to the board of trustees on February 2, 1937, and thereafter ceased to participate actively as trustee. He prayed the court to adjudge the validity of his resignation and, in the alternative, if his prior resignation was held ineffective, that

he be permitted to resign and be relieved of the responsibilities incident to the office of trustee. The other trustees, after affirming the truth of appellants' allegations and acquiescing therein, joined in the prayer for the appointment of a receiver. Their action in so doing, in our opinion, was tantamount to a resignation and a renunciation of the trust.

The situation thus revealed shows that, the solidarity of the board of trustees was broken and its personnel reduced to less than a quorum at the time the general demurrer urged by the Fergusons was acted upon by the court. Obviously, the ruling of the court, in sustaining the demurrer and in dismissing appellants' suit, was predicated, either upon the idea that the trustees could not resign, or that the relief prayed for, that is, the appointment of a receiver, was not the proper remedy. Unquestionably, we think, appellants were authorized to bring the matter of their resignation and discharge before the court, as was attempted; and, as the situation showed that the trust created by statute would likely fail, a case was presented for the interposition of the court. It is a fundamental maxim that a trust shall not fail for want of a trustee or trustees; and where, as in the instant case, a sufficient number of the trustees appointed, neglect, or refuse to exercise the duties of the office, leaving on the board of trustees less than a quorum, a court of equity will interfere, and through a proper instrumentality execute the trust. See 14a C.J. (Corporations) p. 1180, § 3850.

Should the court have appointed a receiver, as contended by appellants, or new trustees to take the place of those resigning, as contended by appellees? The statute, in our opinion, answers the inquiry. The provision is that, upon dissolution, unless a receiver is appointed, the affairs of a dissolved corporation shall be wound up by its then existing officers; no other provision being made, the implication, we think, is inescapable that none other than one of the two methods provided by statute may be adopted. The reason for entrusting to the president and directors of a dissolved corporation the business of winding up its affairs, obviously, was because of their familiarity with and interests in its affairs. This could not be said of any stranger selected to fill a vacancy on the board. Construing similar provisions of a statute and speaking of the legislative reason for devolving these administrative duties upon existing corporate officers, the Supreme Court, in Witherspoon v. Texas Pacific R. R. Co., supra, 48 Tex. 309, at page 319, said: "The statute, in thus providing for the settlement of the affairs of sold-out railroad companies, was enacted on the supposition that the existing directory were more familiar with the business of the company, and, if not superseded by legislative or judicial action, could more readily and satisfactorily wind up and adjust their unsettled business than any other parties. They are designated trustees, because, in discharge of the duties imposed upon them, they do not act under authority of the franchise and charter of the company, but merely as the representatives of its stockholders and creditors. * * * The language of the statute plainly indicates that the power conferred upon them as trustees is to be exercised collectively, and in their aggregate capacity as a body, and not as individuals. To give to each of the directors distinct and independent power to wind up and settle the business of the company, would evidently lead to confusion and a conflict of action, which would be injurious to the interest of the parties for whose benefit they are made trustees; nor would it be consistent with reason or justice that the trustees should be made jointly and severally responsible for property coming into their hands, unless it come to them in their collective capacity."

So, we conclude that, because of resignations the board of trustees having been reduced in membership to less than a quorum (a quorum being a majority by analogy to the provisions of article 1323, R.S., [as amended by Acts 1927, c. 235, § 1, Vernon's Ann.Civ.St. art. 1323] with reference to the board of directors of a corporation), the court should have taken over the administration of the affairs of the corporation and appointed a receiver. On the subject of winding up the affairs of a dissolved corporation, the doctrine is announced in 14a C.J. (Corporations) page 1179, section 3850, that: " * * * Some statutes provide that, when a corporation shall be dissolved in any manner whatsoever (as in this State), the court may appoint a receiver for it, and under such a statute, the mere fact of dissolution, or dissolution and property to be administered, is sufficient ground for the appointment. * * *" It is also said, in Cyc. (subject, Trusts) volume 39,

page 577, that it is proper for a court to appoint a receiver where the trustees omit to act, repudiate their trust, or refuse to act.

However, appellees contend that appellants failed to allege such a cause of action, as would justify the appointment of a receiver as an ancillary remedy. We overrule this contention. As trustees, appellants asserted the right to resign and be discharged from the trust, which, as heretofore shown, is a well-recognized cause of action under the rules of equity. In addition, as stockholders they sought recovery of their just, proportionate shares of the proceeds arising from the liquidation of the assets of the dissolved corporation, which, under statutory provisions, is recognized as an action justifying the appointment of a receiver as an ancillary remedy. See articles 2293 and 2318, R.S.1925. The opinions, of Judge Hightower in Yount v. Fagin (Tex.Civ.App.) 244 S.W. 1036, 1039, and that of Judge Fly in Berkshire Petroleum Corp. v. Moore (Tex.Civ.App.) 268 S.W. 484, are in point and decisive of this question. We therefore sustain appellants' assignments, reverse the judgment of the trial court, and remand the cause for further proceedings.

Reversed and remanded.