The Houston & T. C. R. R. Co. v. Thomas M. Shirley.

(Case No. 4088.)

1. RAILWAY COMPANY — CONTRACT — CONSOLIDATION.— Pending a suit begun by appellee against the Waco & N. W. Railway Company, July 16, 1870, the Houston & Texas C. R. R. Co. entered into a contract with the former road to aid in its construction. For a debt thus contracted the Waco & N. W. R. R. Co. was sold under a deed of trust given to the Houston & T. C. R. R., and the latter road, at the sale in February, 1873, became the purchaser of the property and franchises of the Waco & N. W. R. R. Afterwards, in May, 1873, an act of the legislature was passed for the merger of the two roads, making the sold-out road a part of the purchasing road. Afterwards, in January, 1877, the Houston & T. C. R. R. was made a party defendant, charging that the contract between the roads was illegal, fraudulent and *ultra vires*, and seeking to make the purchasing road liable for the debts of the Waco & N. W. R. R. *Held* —

1. Ordinarily, a consolidated corporation, for the purpose of answering for the liabilities of the old corporations, is deemed the same as each of its constituents, and may be sued under its new name for their debts as if no change had been made in the name or organization of the original corporation; but this rule is restricted to voluntary consolidations.

2. The foundation of the liability of a consolidated corporation for the debts and liabilities of the constituent corporations must rest on agreement, either express or implied.

3. The act of merger was not passed by the legislature, or accepted in contemplation of an agreement between the companies, but because the trust sale had divested the Waco & N. W. R. R. Co. of all its property and franchises, and that the purchaser, being a corporation, needed for that reason only, legislative sanction to authorize it to operate the road.

4. If the Houston & T. C. R. R. Co. exceeded its powers in acquiring the property, it was a consummated transaction and could be impeached, if at all, for that reason, by the state alone.

5. The purchasing road by its contract assumed only the liabilities created by the Waco & N. W. R. R. in the construction of its road after its first contract was made with the Houston & T. C. R. R. Co.

6. That the act of merger did not affect the rights of either stockholders or creditors.

7. That by accepting the conditions of the act of consolidation, the Houston & T. C. R. R. Co. did not subject itself to pay the liabilities of the sold-out road.

2. EXEMPLARY DAMAGES.— See original opinion for a charge of the court on the subject of exemplary damages, held erroneous. At common law, except in actions for breach of promise of marriage, the motives or conduct of the party breaking the contract cannot be made a ground for awarding exemplary damages. Opinions of an elementary writer [1] on this subject referred to in the opinion on motion for rehearing, and disapproved.

3. CONSTITUTIONAL LAW.— The constitution of 1866 did not prevent the franchise of a railway company from being mortgaged and sold under a decree of foreclosure, or by a trustee empowered to sell.

4. DEPOSITIONS.— The refusal of a witness to answer a material question should not be permitted by the officer taking depositions.

5. DEPOSITIONS — PRACTICE.— The question whether a deposition should be excluded because of the failure of a witness to answer a question, is to a large extent left to the discretion of the court; it should not be excluded for any casual omission to answer an unimportant question.

6. FACT CASES.— See conclusion of original opinion for a case where it was error to permit a deposition to be read, because of the failure of the deponent to answer questions.

APPEAL from McLellan. Tried below before the Hon. C. C. Alexander.

On the 19th day of July, A. D. 1869, the Waco Tap Railroad Company, afterwards called the Waco & Northwestern Railroad Company, entered into a written contract with the appellee, Thomas M. Shirley, whereby Shirley undertook to construct the railway for the company from Bremond to Waco. It was to be completed in two years. About April 1, 1870, the railroad company

---

[1] Field on Damages, p. 57.

notified Shirley that he would no longer be recognized as contractor on the road.

On the 16th day of July, A. D. 1870, Shirley filed his suit against the Waco Tap Railroad Company for damages occasioned by a breach of the contract, which he alleges was made by the railroad company.

At the fall term, A. D. 1878, of the district court of McLennan county, a trial was had, which resulted in the jury returning this verdict: "We, the jury, find for the plaintiff in the sum of eight thousand five hundred and nine dollars and forty-one cents, being principal and interest on reserved per cent. and work actually done, and for actual damages in the sum of fifty-four thousand and one dollars and nine cents; also, for exemplary damages in the sum of thirty-seven thousand and five hundred dollars; and further, find that the mortgage be foreclosed against the Waco & Northwestern Railroad Company and the Houston & Texas Central Railroad Company."

Judgment was rendered in accordance with the verdict foreclosing the mortgage on the railroad extending from Bremond to Waco, road-bed, right of way, superstructure, rights and properties and franchises thereof, for the payment of the sum of $8,509.41; and for the other amounts found by the jury, a general judgment was entered against the Houston & Texas Central Railway Company, to be enforced by execution in usual form.

After the termination of Shirley's connection with the Waco Tap Railroad Company as contractor, on the 10th day of June, 1871, the Houston & Central Railway Company entered into a contract with the Waco Tap Railroad Company, then known as the Waco & Northwestern Railroad Company, whereby, for the considerations expressed in the contract, the Houston & Texas Central Railway Company undertook to build and construct, and did build, construct and complete the railroad from Bremond to Waco for the Waco & Northwestern Railroad Company.

An inducement moving the Houston & Texas Central

Railway Company to undertake the building of the railroad seems to have been the execution and delivery to it of a bond, payable January 1, 1873, for the sum of $600,000, in gold, made by the Waco & Northwestern Railroad Company. The payment of this bond was secured by a deed in trust, whereby the Waco & Northwestern Railroad Company conveyed to Peter W. Gray and Benj. A. Botts "all and singular the several tracts and parcels of land which now are, or may hereafter be, or constitute the site of the railway, turn-outs, side-tracks, depot grounds and appurtenances, and all lands which now are or may hereafter constitute and be a part of the road, and the rights of way thereof from the town of Bremond, where it connects with the road of the Houston & Texas Central Railway Company, to the depot grounds in the city of Waco, on the east side of the Brazos river, and thence as authorized by the charter of the party of the first part (the Waco & Northwestern Railroad Company), and also the cross ties and other superstructure work which has been or may hereafter be placed and built on the line of road aforesaid; and also all and singular the chartered rights, privileges and franchises of every kind granted to the party of the first part (the Waco & Northwestern Railroad Company) by acts of the legislature of the state of Texas, which now are possessed by the party of the first part, or to which they may hereafter become entitled under said acts and the laws of Texas relating to railroads."

The Houston & Texas Central Railway Company completed the construction of the line of railroad from Bremond to Waco during the year 1872.

The bond for $600,000 in gold matured January 1, 1873, and the Waco & Northwestern Railroad Company made default in its payment.

A sale under the deed in trust was made by Gray and Botts, trustees.

It was admitted in the record, "that all said documents,

to wit: said contract, supplemental contract, bond and deed in trust, were duly and legally executed, and that the sale under the deed in trust, made by Gray and Botts, was regular and in conformity with the said deed in trust. That said sale was made by the said trustees, Gray and Botts, on the 4th day of February, A. D. 1873, and that at said sale the Houston & Texas Central Railway Company became the purchaser of the property in said deed in trust mentioned, for the sum of four hundred thousand dollars, and the trustees thereupon executed a deed conveying all and singular the trust property to the Houston & Texas Central Railway Company.

On the 24th day of May, 1873, the Houston & Texas Central Railway Company "procured the passage of an act of the legislature of the state of Texas, by which, so far as the legislature could lawfully effect it, the said W. & N. R. Co. was merged into the said H. & T. C. R. Co., and thereafter constituted a part of the same, there being no provision made in said act of merger for the debts of the said W. & N. R. Co.

On the 22d day of April, A. D. 1876, the Houston & Texas Central Railway Company was made a party to this suit, by an amended petition filed on that day, wherein the plaintiff Shirley averred "that all said acts and doings in and about said contracts, sale and purchase between said W. & N. R. Co. and said H. & T. C. R. Co. being illegal and fraudulent and *ultra vires*, therefore no title or right to the property of said W. & N. R. Co. passed to said H. & T. C. R. Co. thereby, and that said H. &. T. C. R. Co. acquires its rights to hold and enjoy the rights and benefits of the property and franchise of said W. & N. R. Co. through said act of merger as aforesaid only, and by no other right or authority. And by virtue of said act of merger and consolidation of said W. & N. R. Co. into said H. & T. C. R. Co., the latter is bound to pay your petitioner all his claims, demands and damages, with interest

thereon, and his proper costs in this behalf expended as hereinbefore set up, the same as said W. & N. R. Co. was bound and liable before said merger."

The Houston & Texas Central R'y Co. pleaded—

1. A general demurrer.

2. The general denial.

3. The statute of limitations.

4. The manner by which it acquired the property of the Waco & Northwestern Railroad Company.

5. That the Houston & Texas Central Railway Company was a *bona fide* purchaser of all the property for value paid without notice, etc.

6. Several matters of estoppel on the part of plaintiff.

7. And adopted the allegations contained in the answer of its co-defendant, the Waco & Northwestern Railroad Company.

A motion for a new trial overruled, and defendant gave notice of appeal. This appeal was prosecuted by the Houston & Texas Central Railway Company.

The charge of the court on the subject of exemplary damages was as follows:

"16. A private corporation is, like an individual, punishable by exemplary damages for wrongful acts done in a fraudulent, malicious or oppressive manner; but in order that it be held responsible, it must be shown that it authorized the act done, sanctioned it in the manner required for the performance of official acts afterward, with a knowledge of the facts, or that it was done by an authorized agent in the performance of an act authorized by the corporation.

"17. Malicious, fraudulent or oppressive acts done by an agent of a corporation, done after the breach of a contract by the corporation, and not in pursuance of its instructions, cannot be considered as a basis for exemplary damages against a corporation from the manner of breaking a contract."

The acts complained of, from which it was claimed that a right to exemplary damages resulted, consisted of what it was claimed was an "intentional gross breach of a contract."

Exhaustive and able arguments for rehearing were filed by counsel for appellee, devoted chiefly to a discussion of the evidence. Their length precludes insertion.

*Geo. Goldthwaite,* for appellant.

*R. R. Reeves,* for appellee.

I. If the deed from Gray and Botts to the Houston & Texas Central Railway Company vested the title in said company to the property therein conveyed, the land grant from the state to the Waco Tap R. R. Co., and its existence as a corporation, and its corporate powers and franchises, did not pass to the Houston & Texas Central Railway Company by said deed, but were derived from the act of merger; and when the Houston & Texas Central Railway Company accepted the merger without providing for the liabilities of the W. & N. W. R. R. Co., it became liable thereby to the plaintiff for the damages claimed in his suit. Act of merger, May 24, 1873, Special Laws, p. 581; Atkinson *v.* The Marietta & Cinn. R. R. Company, 15 Ohio St., 21–35; Chicago R. R. Co. *v.* Moffitt, 75 Ill., 528; Thompson *v.* Abbott, etc., 61 Mo., 176; Eldridge *v.* Smith, 34 Vt., 490, and other cases referred to under first assignment.

II. By accepting the acts of merger and its benefits, without providing for the payment of the liabilities of the Waco Tap & Northwestern Railroad Company, the Houston & Texas Central Railway Company, as its successor and representative, became bound for all said liabilities in the same way that the Waco & Northwestern Railway Company was bound before the merger. Waco Tap R. R. Co. *v.* Shirley, 45 Tex., 325; Gordon *v.* Jones,

27 Tex., 620; Hays v. The H. & G. N. R. R. Co., 46 Tex., 280; Graham v. Roder, 5 Tex., 149; The H. & G. N. R. R. Co. v. Randall, Supt. Ct. Texas, Law Journal, November 22, 1878, No. 18, p. 278; 50 Tex., 254. That a corporation may be guilty of such acts as to subject itself to exemplary damages, Const., art. 16, sec. 26; Hall v. O'Mallay, 49 Tex., 73. As to exemplary damages, Sedg. Meas. Dam., pp. 38, 39, 565, note; Field on Dam., p. 66; The New York & New Haven R. R. Co. v. Schuler, etc., 34 N. Y., 30; Paine v. Lake Erie & Lou. R. R. Co., 31 Ind., 283; Columbus, etc., R. R. Co. v. Powell, 40 Ind., 37; 57 Ill., 528; 61 Mo., 176.

III. The verdict of the jury for the exemplary damages was for a sum less than that claimed by appellee in his petition, and was warranted by law and the facts in evidence, showing that the defendant, the H. & T. C. R. R. Co., its officers and agents, by its authority, were guilty of such acts of malice, fraud and oppression in the breach of the contract with appellee, as to make it liable for said damages.

*E. A. McKenney*, also for appellee.

I. The franchise did not pass to appellant by the conveyance of Gray and Botts. 50 Tex., 552; 2 Redfield's American Railway Cases, Summary of Editor, 690; 6 B. Mon., 1; Green's Brice's Ultra Vires, 302.

II. The franchise was a valuable right conferred on appellant by the state, at the expense of the W. & N. R. Co., and through it, its creditors. The franchise would have enabled the W. & N. R. Co. to acquire more property with which to satisfy its creditors, but the state, by consent of W. & N. R. Co., took away its existence, thereby affecting the creditors; therefore the state substituted appellant, with its consent, for W. & N. R. Co. The liability of the appellant necessarily follows, upon its acceptance of the merger, and the act of merger inevitably

includes that liability. Act of merger, Special Laws, 1873, p. 581; Stephenson v. T. R. R. Co., 42 Tex., 162, Green's Brice's Ultra Vires, p. 545, par. III, IV.; Green's Brice's Ultra Vires, p. 538*, and p. 526 et seq.; Indianapolis, Cin. & L. R. v. Jones, 29 Ind., 465.

III. The act of merger is a complete immersion, or burial, of the W. & N. R. Co. into the body of appellant, through the consent to the prior conveyance and transfer of franchise. Then the debts and liabilities of the W. & N. R. Co. must follow the body wherever it goes. Act of merger, Special Laws, 1873, p. 581 (as the books do not show such another act of legislation — except, perhaps, 29 Indiana, 465 — itself is the only authority in point).

IV. Every purported act of the W. & N. R. Co., of any kind, after merger, though in name of W. & N. R. Co., was, in fact, the act of appellant, through its directors.

Gould, Associate Justice. — This suit was originally instituted against the Waco & N. W. R. R. Co., to recover certain sums alleged to be due for work done under a contract with the Waco Tap R. R. Co. to construct its road from its junction with the Houston & Texas Central Railway to the city of Waco, and to recover damages, actual and exemplary, for an alleged breach of said contract. When formerly before this court on appeal by the Waco & N. W. R. R. Co., it was decided that under his contract Shirley had no equitable mortgage on the roadbed, etc., for any damages he might be entitled to for breach of contract, but that he had such equitable mortgage for sums due him under the contract and not paid. 45 Tex., 355. It was also decided that in estimating the damages sustained by plaintiff by the breach of the contract his future profits under the contract thereby lost were to be taken into consideration.

After the case was remanded to the district court, the Houston & Texas Central Railway Company was made a

party defendant, it being claimed that the Waco & N. W. R. W. Co. had been consolidated therewith and merged therein by an act of the legislature, May 24, 1873; that by reason thereof the Central enjoyed the property and franchise of the Waco road, and was bound to pay petitioner's demands, including damages and interest. There were other grounds on which it was sought to charge the H. & T. Central R. W. Co., but it is not material to state them.

The result of the trial this time was a verdict in the plaintiff's favor for $8,509.41 due under the contract — for $54,001.09 actual damages, and $37,500 exemplary damages—and judgment was accordingly rendered foreclosing the equitable mortgage claimed for the sum just named, and awarding execution against the Houston & Texas Central for the amount of damages, actual and exemplary.

To the extent of the $8,509.41, proved to be due and secured by mortgage, the judgment is not complained of, but all further liability on its part is denied by the appellant.

The act of May 24, 1873, is as follows:

"An act to provide for the merger of the Waco & Northwestern Railway Company, with its properties, rights, privileges and franchises, in the Houston & Texas Central Railway Company."

SEC. 1. Be it enacted, etc.: That the said Waco & Northwestern Railroad Company is hereby merged in the Houston & Texas Central Railway Company, and the said Waco & Northwestern Railroad is hereby made, to all intents and for every purpose in law, a part of the Houston & Texas Central Railway. And the Houston & Texas Central Railway Company is hereby authorized and empowered to operate, manage and control the said Waco & Northwestern Railroad in the same manner as every other part of the said Houston & Texas Central Railway; and shall have the right to continue the con-

struction of said railroad from the city of Waco in a north-westerly direction, in accordance with the terms of the charter of the said Waco & Northwestern Railroad Company; and the said Houston & Texas Central Railway Company shall possess and enjoy all the properties, rights, franchises and privileges belonging and heretofore granted to the said Waco & Northwestern Railroad Company.

SEC. 2. This act of consolidation is passed, and shall become operative, on condition that said consolidated road shall not, in either of its branches, be sold, leased or rented to, or consolidated with, any other parallel, competing or converging railroad; and that said company shall not purchase, own or control any such parallel, competing or converging road; and upon the still further condition that the portion of said Northwestern Railroad not yet built, if built at all by said company, shall be constructed and put in operation within the time required by the charter of said road; and should the general line of the portion of said road not yet built, pass within five miles of any established county seat, then said road shall run to said county seat, and said company shall establish and keep a depot for freight and passengers within one-half mile of the business portion of said town, on condition that the right of way through said town, and sufficient ground, not less than fifteen acres, for switches, turn-outs, and such building as may be necessary and proper, shall be furnished to said company free of charge; *provided*, that said company shall not be compelled to construct said road within one-half mile of any county seat where, from natural obstacles, it is impracticable to do so; but in such case said road shall run, and a depot be established, as near said town as such natural obstacles will admit; and should the line of said road be definitely located through any county before the permanent location of the county seat thereof, then it shall not be necessary for said road to be so varied from its line as to run within one-half mile of said town.

SEC. 3. This act shall take effect and become operative upon the acceptance by said company of the conditions herein stated.

Approved May 24, 1873.

On the subject of the rights and liabilities of the appellant, the court instructed the jury as follows:

"20. That the papers and documents in evidence show a valid title in the Central Railway Company to the existing property therein conveyed, so far as the plaintiff is concerned, and which the plaintiff has no right in this action to question on account of want of authority to convey and receive, and there is no evidence of allegations of fraud in the conveyances, and it is not deemed necessary or proper to submit the issue of estoppel raised by the pleadings, in view of the law and the evidence.

"21. But you are charged, that the act of the legislature in evidence before you, merging the Waco & Northwestern Railroad Company in the Houston & Texas Central Railway Company, and the acceptance of said act and its benefits by said last named corporation (which is not controverted), the Houston & Texas Central Railway Company became liable for all obligations of the Waco Tap, and its nominal successor, the Waco & Northwestern Railroad Company, whether in debt or damages; and in forming your verdict, if for plaintiff, you will find your verdict in terms against the defendants, the Waco & Northwestern Railroad Company and the Houston & Texas Central Railway Company."

The papers and documents referred to show that in October, 1871, pending this suit, the Houston & Texas Central entered into an original and supplementary agreement with the Waco & Northwestern Railroad Company, to aid in the construction and completion of its road, under which the Waco road became largely indebted to the Central, said indebtedness being secured by a deed of trust, including its road-bed, right of way, depot grounds and appurtenances, etc., and all its "chartered rights,

privileges and franchises of every kind, granted to the
party of the first part by acts of the legislature of the
state of Texas, which are now possessed by the party of
the first part, or to which they may hereafter become
entitled under said acts and the laws of Texas relating
to railroads." A sale was had under the deed of trust,
on February 4, 1873, at which sale the Central became
the purchaser, and received from the trustees a convey-
ance of the property and franchises specified in the deed
of trust. It was after this sale and purchase that the spe-
cial act of the legislature of May 24, 1873, was passed.

Ordinarily the consolidation of two railroad corpora-
tions is accomplished by agreement under legislative au-
thority; the terms of consolidation providing for the
rights of both creditors and stockholders of the original
corporations. Says a recent text writer: "The consoli-
dated corporation, for the purpose of answering for the
liabilities of the old corporations, is deemed the same as
each of its constituents, and may be sued under its new
name for their debts as if no change had been made in
the name or organization of the original corporation."
(Jones R. R. Securities, sec. 415.) Evidently a voluntary
consolidation is intended. An examination of the author-
ities cited by the author, as well as those cited by appellee
in support of the charge of the court, will show that they
are all cases of consolidation by agreement under legisla-
tive sanction. Evidently such a consolidation cannot be
accomplished in disregard of the rights of creditors or
stockholders, and accordingly either in the statute author-
izing or in the agreement consummating such consolida-
tion, stipulations are inserted for the protection of those
rights. And even if neither statute nor agreement make
mention of creditors, the consolidated corporation is held
to have assumed the liabilities of its constituents. (Pierce
on Am. R. R. Law, p. 503, citing 1 Am. Rail. Cas., 96, notes.

But clearly the purchaser of property at a sale under

an execution or deed of trust assumes no personal liability for the debts of the former owner; and if by such a purchase the chartered rights and corporate existence and privileges of a corporation pass under the control of the purchaser, it still does not follow that its liabilities also attach to him.   Vilas *v.* Milwaukee, etc., R. W. Co., 17 Wis., 513; Smith *v.* Chicago & N. W. Railway Co., 18 Wis., 22; Morgan Co. *et al. v.* Thomas *et al.,* 76 Ill., 147.

The laws of this state allow a railroad corporation to incumber by deed of trust for the payment of its debts and legal liabilities, its "road-bed, track, franchise and chartered rights and privileges," to be deemed an entire thing and to be sold as such; and " the purchaser or purchasers at such sale and their associates shall be deemed and taken to be the true owners of said charter, and corporators under the same, and vested with all the powers, rights, privileges and benefits thereof, in the same measure and to the same extent as if they were the original corporation of said company; and shall have power to construct, complete, equip and work the road upon the same terms and under the same conditions and restrictions as are imposed by their charter and the general laws of the state."   Pasch. Dig., art. 4912; R. C., art. 4260.

It is provided that such sale shall not pass to the purchaser any right to recover of " former stockholders any sums which may remain due upon their subscriptions of stock, but said stockholders shall continue liable to pay the same in discharge and liquidation of the debts due by the sold-out company."   The directors of the sold-out company at the time of sale are made "trustees of the creditors and stockholders of the sold-out company, and shall have full powers to settle the affairs of the sold-out company, collect and pay the outstanding debts, and divide among the stockholders the money and other property that shall remain after the payment of the debts and necessary expenses; and the persons so constituted trustees

shall have authority to sue by the name of the trustees of such sold-out company, and may be sued as such, and shall be jointly and severally responsible to the creditors and stockholders of such company, to the extent of its property and effects that shall come to their hands. And no suit pending for or against any railroad company at the time that the sale may be made of its road-bed, track, franchise and chartered privileges, shall abate, but the same shall be continued in the name of the trustees of the sold-out company." Pasch. Dig., arts. 4915, 4916; R. C., 4262-5.

The plain intent of the statute is to transfer the road-bed, track, franchise and chartered rights entire to the purchaser and associates, upon their adopting the form of organization prescribed in the charter and complying with its other requirements; and to remit creditors unsecured by lien to their remedy against such assets as pass to the trustees of the sold-out company.

Under this statute it is believed that a number of railroads in this state have been sold out and purchased by individuals, who have proceeded to organize and manage the corporation under the original charter. Galveston R. R. v. Cowdrey, 11 Wall., 459-474. Not only the road-bed and other mortgaged property, but the franchise to operate a road and the very corporate existence of the sold-out railroad passes to the new organization by virtue of the statute. Ordinarily such purchaser and associates need no further legislation. But in this case the secured creditor, itself a railroad corporation, became the purchaser. The statute does not in terms provide for a purchase by another railroad or corporation. The powers of corporations are strictly limited to those granted in their charters or by law. If the charter of the Houston & Texas Central was not comprehensive enough to authorize it to operate a railroad from Bremond to Waco, it might well hesitate to attempt to organize under the charter of the

sold-out railroad, as an individual purchaser might have done.   In cases of parallel or competing roads, any species of consolidation is forbidden by the present constitution (art. X, secs. 5, 6); and the consolidation of different railroads, though not competing, does not appear to have been contemplated by the statute.   Hence, before undertaking to operate the Waco & N. W. R. R., it was but a prudent precaution in the Central to apply for and obtain legislative sanction.   Holding the property purchased free from the claims of creditors and stockholders of the Waco & N. W. R. R. Co., we would reasonably expect that it would seek to obtain the passage of an act imposing no such burden.   Such seems to be the purport of the act passed, for, whilst the Waco & N. W. R. R. Co. is merged in the Central and made a part of it, and the Central is empowered to construct and operate said road as its own, and to possess all the properties, rights, franchises and privileges "belonging and heretofore granted" to the Waco & N. W. R. R. Co., we find no stipulations whatever recognizing or protecting any rights in stockholders or creditors.   Certain conditions are imposed, on the acceptance of which by the company, the act takes effect; but these conditions do not relate to either stockholders or creditors.   No assent of the Waco & N. W. R. R. Co. is provided for.   The act is neither valid nor intelligible unless read in the light of the occurrences which preceded and called for its passage.   How could the legislature merge the Waco & N. W. R. R. Co. into the Central, regardless of the consent of the former and of the rights of stockholders?   Clearly, the legislature assumed that the purchase under the deed of trust had consummated all that the act undertook to do, provided only that the purchase by a corporation received legislative sanction.

If there were effects or rights of the Waco & N. W. R. R. Co. not included in the deed of trust and not transferred to the Central before the act was passed, our opin-

ion is that the act was inoperative to effect such transfer, without the assent of the first-named corporation. But in regard to all the property and rights so included, the Central being already the equitable owner, was by the act vested with full ownership, and was empowered to operate the road under its own name and charter. In accepting the conditions of the act, our opinion is that the Houston & Texas Central R. R. Co. did not assume the liabilities of the Waco & N. W. R. R. Co., either to its stockholders or creditors.

On the subject of exemplary damages the court charged as follows:

"15. A mere breach of the contract on the part of the company will not authorize a verdict for exemplary or *punitory* damages; but if there was a breach of the contract by the corporation, and there was an act done by it, and such breach was done and made with a fraudulent intention to deprive Shirley of his legal rights, or with a malicious intent to oppress him, you may find a verdict for plaintiff for exemplary damages in any sum in your discretion, not exceeding the amount claimed by plaintiff as exemplary damages. If there was such a breach of the contract as entitles the plaintiff to the recovery of exemplary damages, under this charge his right to a verdict for the same is not impaired, although he may have suffered no actual damage such as mentioned in charges number ten and eleven."

The court rightly treated the action as one for breach of contract. No damages were claimed or recovered for a tortious conversion of plaintiff's property. The recovery sought and obtained was of sums due under the contract, of actual damages for the breach of contract, and of exemplary damages for such breach, on the ground that it was committed with a fraudulent and malicious intent to oppress.

Appellant claims that exemplary damages for a breach

of contract is without precedent. Certainly the cases from this court cited by appellee constitute no such precedent. In Graham *v.* Roder, the gist of the action was deceit and fraud in professing to sell that which had no existence. 5 Tex., 147. Gordon *v.* Jones was an action for the tortious conversion of property. 27 Tex., 620. None of the other cases cited from this state were for breach of contract. At common law, where the action is on the contract, the motives or conduct of the party breaking the contract cannot be considered in damages, except in actions for breach of promise of marriage. Mayne on Law of Damages, p. 10; Wood's Mayne on Damages, sec. 45; Sedgwick on Damages, 6th ed., 246 (208); Field on Damages, sec. 53. Mr. Sedgwick seems to think that this rule grows out of the forms of action at common law, and that the rule might be otherwise when there were no such forms. The reason of the rule that confines the recovery in suits on contract to actual damages is believed to still prevail, although we have no forms of action. If, in ordinary litigation on contracts, issues as to motives and exemplary damages be allowed, the result would be greatly to increase the intricacy and uncertainty of such litigation.

The exclusion of such issues in suits on contract may be justified on the policy of limiting the uncertainties and asperities attending litigation of such issues, to that class of cases in which the nature of the wrong complained of renders those issues and evils to some extent unavoidable. It is to be remarked that our statute, where a suit is founded on a certain demand, does not permit the defendant to set off unliquidated or uncertain damages. Pasch. Dig., art. 3447. At all events, the allowance of exemplary damages in suits on contract is not supported by authority, and the innovation is one which we are not prepared to make.

On the trial appellant objected orally to the depositions

of Brown and Boyce, filed on the day the trial commenced, that they had each failed to answer certain cross interrogatories propounded to them, or had answered them evasively. The court in signing the bill of exceptions explains that the defendants were informed that the court would entertain objections to particular interrogatories, the crosses to which had not been properly answered. The authorities are that the omission to answer, or the refusal to answer, is fatal to the entire deposition. Ketland v. Bissett, 1 Wash. C. C., 144; Winthrop v. Ins. Co., 2 Wash. C. C., 7; Kimball & Rowe v. Davis et al., 19 Wend., 437; Smith v. Griffith, 3 Hill, 334.

Our opinion is that the objection, if well founded, was fatal to the entire deposition, and we are unable to see that there was such an amount of other testimony to the same effect as to show that the erroneous admission was an immaterial error.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered January 16, 1880.]

ON MOTION FOR REHEARING.

GOULD, ASSOCIATE JUSTICE.—In disposing of the motion for rehearing, it is proposed to do little more than to state our conclusions, on what we regard as the material points or questions raised in its support. The want of time forbids an attempt to discuss all of the legal positions assumed by counsel for appellee, each in elaborate briefs and printed arguments, characterized by great zeal, industry and ability.

The point is made that those sections of the statute referred to in the opinion as authorizing a railroad company to mortgage its franchise, were repealed by the constitution of 1866. Art. 7, sec. 6; Pasch. Dig., p. 943. In

the original printed argument of counsel for appellant, filed December 5, 1879, this statute was relied on and cited at length, and it is not remembered that counsel for appellee in their oral arguments asserted its repeal. After the control of the state government was assumed by the military, under the reconstruction laws of the United States, and from that time down to its incorporation into the Revised Code, there is certainly some reason to believe that this statute was generally regarded, and often acted on, as in force, and to claim that it has repeatedly been treated as in force by the legislature and by this court. Rev. Code, art. 4259 *et seq.;* 2 Pasch. Dig., arts. 7387–9; Scogin *v.* Perry, 32 Tex., 21; Good *v.* Sherman, 37 Tex., 660; Witherspoon *v.* Tex. & Pac. R. R. Co., 48 Tex., 309; Tyler Tap R. R. Co. *v.* Driscol, 52 Tex., 17; R. R. Co. *v.* Henning, 25 Tex., 466. But whether the statute was repealed and so remained, or whether, on the other hand, it should be treated as having been in force after the fall of 1867, is not material to be decided in this case; for in either event, we are of opinion that the power to mortgage the franchise was otherwise sufficiently recognized by the state. In the same sentence of the constitution of 1866 which repeals the act of December, 1857, and immediately following the repealing clause, we find the following: "And the franchise corporate privileges of any incorporate company shall not be sold under judgments, except for the foreclosure of mortgages or liens created in the manner prescribed by law." In a previous part of the same section the state was secured "by a first lien or mortgage upon the road, rolling stock, depots and franchises of the corporation whose bonds may be guaranteed." We think that these clauses show that it was the intention of the constitution of 1866 to permit the franchise of a railroad company to be mortgaged, and to be sold under a decree of foreclosure, or by a trustee empowered to sell.

The original opinion proceeds on the idea that the foun-

dation of the liability of a consolidated corporation for the
debts and liabilities of the constituent corporations, must
rest on agreement, either express or implied.    Proceeding
on this basis, the court held, in substance, that the act of
merger was not passed or accepted in contemplation of
any agreement between the two companies, made or to
be made, but in contemplation of the fact that the trust
sale had divested the Waco & N. R. R. of its road-bed,
mortgaged property and franchise, and that the purchaser, .
being a corporation, needed for that reason, and for that
reason only, legislative sanction to authorize it to operate
the road.    The writer of the opinion may not have been
happy in expressing the nature of the rights acquired, or
supposed by the legislature and the railroad companies to
have been acquired, by the Central through its purchase;
but it is believed that, fairly construed, the substance of
the opinion is as above stated.

It is urged that the original contracts and the trust sale
and purchase were all *ultra vires* and void, and it seems
to be argued that the legislature in passing, and the Cen-
tral in accepting, the act, must be presumed to have
treated all these proceedings as nullities.    It is replied,
and the position seems to us sound, and supported by the
authorities cited by counsel, that though the Central had
exceeded its powers in acquiring property, it was a con-
summated transaction, subject only to be impeached for
that reason by the state.    But a further reply is, that at
the time the act was passed the Central appears to have
been in undisputed possession under its contracts and pur-
chase, and there is nothing to indicate that it was treated
by the legislature as having acquired no rights thereby.
In one instance, at least, the same legislature treated the
purchase of a railway at sale and foreclosure of mortgage,
by another railway corporation, not as a nullity, but as
making the latter the "*owner*" of the former, and reciting
these facts in the preamble, proceeded to enact that the

former railroad is "declared to be, to all intents and purposes in law, part of" the latter. See act of May 8, 1873, Special Laws. It is impossible to understand how the legislature could have passed the act, looking upon the purchase as conferring no rights, either because of the *ultra vires* nature of the contracts and purchase, or because the contracts were tainted with fraud, or were entered into in anticipation of the absorption of the Waco & N. R. R. by the Central.

It is claimed that the Central controlled the Waco & N. R. R. Company, owning over nine-tenths of its stock, and a majority of the directors of the latter being directors of the Central, and that the act of merger was passed, looking upon the application of the Central as equivalent to the assent of the other company. We think the record shows that the act was not passed in contemplation of any agreement fixing terms of consolidation, and it is therefore not important to inquire whether the Central was in a position to force the assent of those stockholders not interested in the Central. Counsel have made no suggestion how these stockholders were to be disposed of, under their view of the act of merger. We think the reasonable conclusion is that their rights, after the sale, were regarded as valueless, though we certainly do not intend to say that the land donation of the state was or was not embraced in the deed of trust, or that in fact the stockholders had nothing left. An insuperable objection to construing the act of merger as attempting to vest the property of one company in another, is the want of power in the legislature to do this. If the Central be estopped from denying the constitutionality of the act, we still think it highly improbable that the legislature intended to affect property rights by the act.

It is claimed that the original and supplementary contracts show an agreement on the part of the Central to pay off all of the existing liabilities of the Waco & N. R.

R.  That subject received the careful consideration of the court on the original hearing, althought not embodied in the opinion, and our conclusion then was, and now is, that the Central, by its contract, assumed only the "liabilities created by the Waco & N. R. R. in the construction of its road after the first contract was made with the Central." It is very possible that the Central·thought Shirley's pending suit was groundless and would result in nothing; but still it does not appear that by its contracts, or by the acceptance of the act of merger, it assumed to pay him.

Upon the whole, looking at all the surroundings, we are still of opinion that the act was passed to give the assent of the state to the purchase made by the Central, and to enlarge its corporate rights so as to enable it to operate the Waco & N. R. R.; that the act was not designed to affect, and did not affect, the rights of either stockholders or creditors; that as to creditors, it neither took away any assets from their reach, nor placed new assets within their reach; and that by accepting the conditions of the act the Central did not subject itself to the liabilities of the Waco & N. R. R.  On this branch of the case we will only add that no question has been before us as to the rights of a judgment creditor of the latter road, and that we are not aware of having said anything which would preclude such a creditor from any remedy he may be entitled to, or embarrass him in seeking that remedy.

II. On the subject of exemplary damages because of alleged malice in the breach of a contract, we adhere to the views expressed in the opinion.  The charge of the court submitted to the jury no issue as to whether or not a tort had been committed, or as to the amount of actual damages to the "character, reputation and standing among business men" of plaintiff from any alleged tortious act of defendant, established to their satisfaction, but allowed them to give exemplary damages, if there was a

breach of the contract done and made with a fraudulent or malicious intent. The expression in the charge about an act done by the corporation, is indefinite and amounts to nothing. The question presented to us was on this charge. Was it right? Or, was it wrong? We answered that it was wrong, and notwithstanding the authorities referred to by counsel, we are still of that opinion. The cases cited as to the enlarged measure of actual damages, for a fraudulent failure to comply with a contract to convey land, certainly do not authorize exemplary damages. Cases are also cited where exemplary damages have been allowed in suits against carriers for breach of contract; but evidently on the facts, the action might have sounded in tort, for what amounted to a tort was alleged. With due respect for the elementary authors cited, we are unwilling to follow them in this matter. One of them has declared the allowance of exemplary damages to be a " departure from the true principles of the law of damages, and of public policy." Field on Damages, p. 28, note. As we agree with him in this opinion, we are not prepared to go beyond the authorities, and to lead the way in allowing such damages for breaches of contract.

But counsel assert the right to sue in one action for a breach of contract, and for damages for a tort, where both claims grow out of the same transaction, and are so connected that they may conveniently and appropriately be litigated together. Thus qualified, this proposition is believed to be in accordance with the decisions in this state. But we regard the petition of plaintiff, in so far as it attempts to allege a tort and to recover damages therefor in addition to damages for a breach of contract, as substantially seeking a double recovery for the same wrong. The real purport of the petition was to claim damages for breach of contract, including profits lost by the breach, and to claim also exemplary damages because of alleged malice in committing the breach.

III. In regard to the depositions of Brown and Boyce, we adhere to our opinion that they should have been excluded. They were giving their opinion as contractors and builders, of the cost of clearing, track laying and other work, and it was the right of defendant to have them answer interrogatories calculated to show the extent of their experience and knowledge, and the value of their opinions or estimates. The refusal to answer a material question should not be allowed by the officer taking the depositions, and the mere neglect to answer may prove as injurious to the party questioning.

It is not believed that the authorities require the exclusion of depositions in all cases where the witness has failed to answer every question. Much must be left to the discretion of the court. The rule should not be allowed to be presented to obstruct or retard trials, or to exclude depositions because of a manifest casual failure to answer some unimportant question.

The motion for rehearing is overruled.

OVERRULED.

[Opinion delivered December 17, 1880.]