WESTERN UNION TELEGRAPH COMPANY ET AL. v. L. M. BARKLEY ET AL.

Decided November 3, 1910.

### 1.—Telegraph—Contract—Special Damage.

For the failure to transmit and deliver a message only such damages can be had as could be reasonably anticipated. There can be no recovery for damages arising out of special circumstances, such as the existence of an option to purchase certain property at a named price, which would have been closed had the message been delivered, unless the knowledge of its existence was disclosed to the carrier or could be gathered from the contents of the message.

### 2.—Same—Case Stated.

A member of a firm which had an option to purchase certain horses at a price fixed wired its agent on the ground as follows: "Buy horses. Ship at once. Other parties after them. Confidential." The message was not delivered; the agent returned without purchasing; and the horses were sold to others. Held that the message did not convey such notice of the special circumstances as to permit recovery of the loss of profits which would have resulted from the purchase and resale of the horses had the message been delivered.

Appeal from the District Court of Tarrant County. Tried below before Hon. R. H. Buck.

*George H. Fearons* and *Spoonts, Thompson & Barwise,* for appellant.—The message in question, stating as it did in effect to buy the horses and ship at once, was wholly insufficient to charge the telegraph company with notice of the claimed option agreement: Western U. Tel. Co. v. True, 101 Texas, 236; Postal Tel. C. Co. v. Sunset Cons. Co., 102 Texas, 148; Elliott v. Western U. Tel. Co., 75 Texas 18; Pacific Express Co. v. Jones, 52 Texas Civ. App., 367; Western U. Tel. Co. v. Lively, 15 S. W., 197; Western U. Tel. Co. v. Kibble, 53 Texas Civ. App., 222; Railway Co. v. Hatchell, 55 S. W., 187, 22 Texas Civ. App., 498; Railway Co. v. Sproles, 92 S. W., 41; Western U. Tel. Co. v. Shumate, 2 Texas Civ. App., 429.

*Lassiter & Harrison,* for appellant, Texas Mexican Railroad Company.

*Stephens & Miller,* for appellees.—The language of the message was sufficient to give the defendants notice that the sender of the message had a man on the ground at Hebbronville, Texas, for the purpose of buying and shipping the horses to him at Fort Worth, Texas, and the message itself was an instruction to him to buy and ship the horses at once, evidently for the purpose of making a profit, which is emphasized by the fact that the message stated that other parties were after them and that it was confidential: Sun Mfg. Co. v. Egbert and Guthrie, 37 Texas Civ. App., 512; Telegraph Co. v. McKenzie, 36 Texas Civ. App., 178; Carver v. Western U. Tel. Co., 15 Texas Civ. App., 547; Chisholm & Moore Co. v. U. S. Canopy Co., 77 S. W., 1062; Western U. Tel. Co. v. Morrison, 33 S. W., 1025.

HODGES, Associate Justice.—This appeal is from a judgment in favor of the appellees against the appellants, The Western Union Telegraph Company and The Texas Mexican Railway Company, for damages claimed as the result of a failure to deliver a telegraphic message. The evidence shows that on the morning of April 3, 1905, L. M. Barkley, for the benefit of the firm of Barkley & Thomas, appellees, filed with The Western Union Telegraph Company at Fort Worth the following telegram addressed to C. K. Thomas at Hebbronville, Texas: "Buy horses. Ship at once. Other parties after them. Confidential. (Signed) L. M. Barkley." C. K. Thomas, the addressee, was then in Starr County near Hebbronville, and had been there for several days. He had gone to that locality with a view of buying some horses for Barkley & Thomas if in his judgment it was advisable to do so. The testimony on the part of the plaintiffs shows that Barkley and C. K. Thomas, about a month or more previous to the date above referred to, had been in Starr County buying cattle, and while there looked at some horses belonging to Yzaquire, a Mexican; that they were offered these horses at $30 per head, and were verbally given an option on sixty horses at that price to continue till the last of March or the first of April following. These were the horses to which the message referred. It was understood between Thomas and Barkley that the latter would wire instructions to purchase in the event he deemed it to their advantage. The telegram in question was never delivered to Thomas, and he returned to Fort Worth without having made the purchase and the horses were sold to other parties. In their petition the appellees claim that the purpose of the telegram was to direct the purchase of these horses at the price indicated, $30 per head; that the purchase would have been made had the message been delivered, and that they could and would have sold the horses in Fort Worth at from $50 to $60 per head. They claim as the measure of their damages the difference between what the horses could have been purchased for under their agreement with the Mexican and the price at which they could have been sold on the market at Fort Worth. The line of the appellant, The Western Union Telegraph Company, extended only to Corpus Christi, and in order for the message to reach

Hebbronville it had to pass over that of the Texas Mexican Railway Company. The proof shows that the message was promptly transmitted by The Western Union Telegraph Company to Corpus Christi and there delivered to the Texas Mexican Railway Company for transmission to Hebbronville. It also appears that the failure to deliver was due to the fault of the latter company. The defense is made by the appellants that they had no notice of the conditions upon which the appellees rely to recover the special damages sued for. Barkley, the sender of the message, does not claim that he gave the agent at Fort Worth any information aside from that disclosed by the message itself. The question then is, does the telegram upon its face furnish sufficient notice to fix upon either of the appellants liability for the particular damages sought in this action? In Joyce on Electricity, vol. 2, sec. 952, the rule applicable to this class of cases, based upon a large number of authorities cited in notes, is thus stated: "As a general rule, if the sender of a despatch does not notify the company of its importance or of special damages, which may result from a breach by the telegraph company of its contract to transmit and deliver, and the message does not, from its language, convey to the company any such knowledge, only such damages may be recovered as could have been reasonably anticipated from the language of the message, and there can be no recovery for damages arising out of such special circumstances. The rule, however, is not to be construed as meaning that all the details in reference to a transaction referred to in a despatch and which are known to the parties themselves, need be disclosed to the company to render it liable for more than nominal damages." What is here said is in harmony with the ruling of our Supreme Court in the case of Western U. Tel. Co. v. True, 101 Texas, 236, 106 S. W., 315, cited and relied on by appellants.

The face of the message was sufficient to inform the telegraph company that Barkley was communicating instructions to Thomas to purchase a particular lot of horses and to ship them at once to Fort Worth. It was also fairly to be inferred from the language used that unless the purchase was made at once the deal would be prevented by the intervention of rival purchasers. Under the pleadings and evidence in this case we are not called upon to decide whether the notice embodied in the face of the message was sufficient to form the basis of a claim for some other kind of damages, but whether it warranted the giving of that which was obtained in this judgment. Appellees are not seeking reimbursement for a loss of something which had been previously acquired, but compensation for a benefit which they could and would have realized from the agreement with the party who gave them an option on the horses. In other words, they are claiming as damages the loss of a contract, or agreement. We think it will hardly be questioned that under the well established rule referred to in the authorities cited, such damages can not here be recovered unless at the time the message was delivered for transmission the company had notice of the existence of this contract, or agreement, with the Mexican who had the horses for sale,

or unless it was placed in possession of facts sufficient to put it upon notice that some kind of an agreement to that effect was pending. We do not think the language of the message was sufficient to convey that notice, and it is not claimed that there was any other given. The direction to buy horses, when taken in connection with what followed, might be construed as referring to some particular lot, the identity of which was understood between Barkley and Thomas; but did not apprise the company that either Barkley or Thomas had any agreement, or understanding, of which they were then about to avail themselves. The warning contained in the expression "Other parties after them," is not inconsistent with the inference that the stock were then on the open market and subject to the purchase of any satisfactory bidder. In fact, it is rather opposed to the idea that any contract rights existed with the party who had the horses for sale. Nor can it be said that the message intimated that the horses were to be purchased at any price other than their market value. It is not claimed in the pleadings that the appellees were by the negligence of appellants deprived of the opportunity to purchase a given number of horses at some particular market price, or that the price at which these horses were offered was their market value in that vicinity, and that they were deprived of the opportunity to secure horses at that price; but the specific claim is made that they were prevented from availing themselves of the terms of a contract, the terms of which were set out and relied upon.

It is unnecessary, in view of the disposition we make of the case, to discuss other errors assigned in the briefs of either of the appellants.

The judgment of the District Court will be reversed, and the cause remanded.

*Reversed and remanded.*

Writ of error refused to Barkley.