**WESTERN UNION TELEGRAPH CO. v. GOLD.** (No. 1245.)

(Court of Civil Appeals of Texas. El Paso. Nov. 10, 1921. Rehearing Denied Dec. 8, 1921.)

1. Telegraphs and telephones ⊂=65(1)—Contract to promptly transmit message held sufficiently alleged.

A petition alleging that "R. delivered to the representative and agent of the above-named defendant company * * * for transmission * * * a telegram, * * * 'Urgent that you meet me tomorrow morning at M. Leave on night train sure'—which the defendant by its representative and agents, undertook to deliver to the addressee," and that such message was not delivered and such failure resulted in plaintiff not being employed as attorney in certain matter, though meager in stating the contract to properly transmit and deliver the message, was sufficient to show an obligation on the part of the defendant to promptly deliver the message and to warrant recovery of damages.

2. Telegraphs and telephones ⊂=38(6)—Notice of consequences of failure to promptly deliver message essential.

While it is not essential that a telegraph company should have explicit information as to the character of a telegram and of the consequences of failure to promptly deliver, still, in order to be liable for damages, it must be apprised in some way, either from the wording of the telegram or from information by the sender, or from the circumstances, that its failure to transmit or deliver promptly will probably occasion injury.

3. Telegraphs and telephones ⊂=38(6)—Message held notice of urgency.

A telegram, "Urgent that you meet me tomorrow morning at M. Leave on night train sure—" was itself sufficient to advise telegraph company that the message was urgent, and had reference to matter of business, and that it should be promptly delivered.

4. Telegraphs and telephones ⊂=66(4)—Attorney's loss from failure to deliver message shown.

Evidence *held* to warrant finding that failure of defendant to deliver telegram resulted in plaintiff's not being employed as counsel and being paid a fee therefor.

5. Telegraphs and telephones ⊂=38(1)—Payment of fee not essential to recovery for delay.

It is not essential to recovery for failure to promptly transmit and deliver a telegram that a fee be paid for the transmission.

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Depositions ⬯83(2)—Suppression of deposition discretionary.**

The suppression of a deposition is largely a matter of discretion with the trial court.

**7. Depositions ⬯83(3)—Refusal to suppress deposition not error.**

Refusal of court to suppress deposition of witness who refused to answer cross-interrogatories was not error where the answers solicited by the cross-interrogatories were not material.

On Motion for Rehearing.

**8. Appeal and error ⬯1043(6)—No reversal on ground of unethical conduct.**

A cause will not be reversed because witness in deposition refuses to answer cross-interrogatories on the advice of one of the parties, who was an attorney, where answers solicited were immaterial, as courts cannot reverse as a punishment or to establish a precedent in the matter of morals or professional duty in the practice of law.

**9. Depositions ⬯83(3)—Suppressed if material questions are not answered.**

A deposition will be suppressed on motion if witness refuses to answer material cross-interrogatories.

Appeal from El Paso County Court at Law; J. M. Deaver, Judge.

Suit by A. S. Gold against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Francis R. Stark, of New York City, and Beall, Kemp & Nagle and H. Potash, all of El Paso, for appellant.

Gold & Kroeckel, of El Paso, for appellee.

WALTHALL, J. A. S. Gold brought this suit against the Western Union Telegraph Company to recover damages in the sum of $800, alleging, as a cause of action, the negligent failure of appellant to deliver to him a telegram, dated October 21, 1919, in words and figures as follows:

"A. S. Gold, First National Bank Bldg., El Paso, Texas. Urgent that you meet me tomorrow morning at Marfa. Leave on night train sure.        R. R. Kleinman."

After the formal parts of the petition it was alleged:

"R. R. Kleinman * * * delivered to the representative and agent of the above-named defendant company * * * for transmission * * * a telegram in the following words and figures, to wit: [stating the telegram as above]—which the defendant by its representative and agents undertook to deliver to the addressee."

Then follows an allegation of the failure to deliver the telegram. It was alleged that—

"Kleinman sent the said message for the purpose of having the plaintiff come to Marfa, and there employing plaintiff as attorney and counsel in certain legal matters in which he and others were involved."

It was alleged that by reason of the failure of the defendant to deliver the message plaintiff was unable to leave El Paso by the night train as requested, and that on the morning of October 22, 1919, Kleinman placed the business he wished plaintiff to attend to in the hands of other attorneys, to his damage as above.

Appellant answered by general demurrer and general denial.

The case was tried with the assistance of a jury, and a verdict rendered in favor of plaintiff in the sum of $150, and judgment was accordingly rendered.

The first assignment is directed to the overruling of the general demurrer. The several propositions thereunder are to the effect that, there being no averment in the petition of a contract by which appellant undertook to transmit the message, the petition will not support a judgment; that the failure to allege any payment to appellant for the transmission of the message, and failure to allege that appellant bound itself to deliver the message the general demurrer, should have been sustained; that, there being no allegation of any notice to appellant that appellee would suffer pecuniary loss on his failure to reach Marfa on the morning of March 22d, nor any allegation that the telegram on its face apprised appellant of the facts from which it could reasonably infer a pecuniary loss to appellee in the event the telegram was not delivered on the night of October 21st, the petition was subject to the general demurrer.

[1] While the allegations in the petition are meager in stating the contract between the sender and the telegraph company to promptly transmit and deliver the message, we have concluded, under the following authorities, that it was sufficient to create an obligation on the part of appellant to promptly deliver the message it had undertaken to deliver. Western Union Telegraph Co. v. Turner, 94 Tex. 304, 60 S. W. 432; Western Union Telegraph Co. v. Adams, 75 Tex. 535, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920; Western Union Tel. Co. v. True (Supreme Court on second appeal) 105 Tex. 344, 148 S. W. 561, 41 L. R. A. (N. S.) 1188; Western Union Tel. Co. v. Dorough, 213 S. W. 282.

The second assignment and the propositions thereunder are directed to the refusal of the court to give the requested charge to find for the appellant. The several contentions under this assignment are to the effect: There was no evidence that appellant had notice by the verbiage of the telegram, or otherwise, that the failure of appellee to be

in Marfa at time stated in the message would cause him pecuniary loss, and that, for want of such notice, the requested charge should have been given.

The circumstances under which the message was delivered for transmission are disclosed by the evidence, and are briefly these: Kleinman, the sender of the message, lived at Presidio, in Presidio county. Appellee, Gold, was an attorney, and lived in El Paso, and had been Kleinman's attorney for a number of years, and there was an understanding between them that in important matters Gold would represent Kleinman whenever and wherever requested. Kleinman desired Gold to go at once to Marfa on what seemed to Kleinman at the time important business for two of Kleinman's friends, to represent them as their attorney, and, also to advise with Kleinman in some matters of his own. Appellant had no notice that Gold was an attorney, or the matters about which his services as an attorney were desired, or that Gold would suffer loss or damage or the extent of it in the event the message was not delivered, other than as the words contained in the telegram would advise him.

[2] The rule in this state seems to be stated in Telegraph Co. v. Houston Rice Mill Co., 93 S. W. 1084, that, while it is not essential that the company should have explicit information as to the character of the telegram and of the consequences involved in its failure to perform its duty in delivering the message, still it must be apprised in some way, either from the wording of the telegram or from information imparted to it by the sender, or from the circumstances, that its failure to transmit or deliver it with dispatch will probably occasion some injury or loss. The case referred to, and others we have examined, hold that it is sufficient notice if the message indicates or suggests that it has reference to a matter from which such consequences may result from its nondelivery.

In Telegraph Co. v. Turner, 94 Tex. 309, 60 S. W. 432, the telegram, omitting the address, reads:

"Accept offer five three quarters send tickets accept Rogers. [Signed] J. T. Turner."

In answering the certified question:

"Was it necessary before Turner could recover the damages claimed by him, for the company to have notice of the fact that the delivery of the message to Nelson (addressee) was necessary to close the contract for the sale of the cotton?"

—the Supreme Court, through Judge Williams, answered the question in the negative, saying that the language of the message was sufficient to suggest that it was intended as the acceptance of an offer involving a business transaction, and to make it the duty of the company, if it desired further information, to request it.

In Telegraph Co. v. Adams, supra, the court said:

"When the general nature of the communication is plainly disclosed by its terms, instead of requiring the sender to communicate to the unwilling ears of the * * * operator the relationship of the parties concerned, a more reasonable rule will be, where the receiver of the dispatch desires information about such matters, for him to obtain it from the sender, and if he does not do so to charge his principal with the information that inquiries would have developed."

[3] The verbiage of the message was sufficient to advise the company that it was urgent and that Gold should go to Marfa, and had reference to some matter of business. If the company desired to know the relationship of the parties, or more of the particulars as to why Gold should be in Marfa at the time desired, the rule stated above makes it the duty of the company to make further inquiry.

What has been said in discussing the previous assignment applies to the third and fourth assignments.

[4] The matter submitted by the fifth assignment, to the effect that the court erred in submitting any issue to the jury under the undisputed evidence that it was not within the contemplation of the parties that the failure to deliver the message would result in the plaintiff's not being employed as counsel, and being paid a fee therefor, we think, is not sustained by the record. Kleinman testified that Gold had represented him, and it was understood between himself and Gold that Gold would serve him as attorney, and whenever desired, and that in sending the message he wanted Gold to come to Marfa to take care of a case in which his two friends were involved. He and his friends thought the matter important. Kleinman testified that he would have retained Gold to represent himself and the other parties, and had agreed to compensate him for his services.

[5] The sixth assignment, that it is not shown a fee was paid for the transmission of the message, is decided against appellant's contention in Telegraph Co. v. Snodgrass, 94 Tex. 284, 60 S. W. 308, 86 Am. St. Rep. 851.

The seventh assignment complains of the refusal of the court to suppress the deposition of the witness Kleinman, he having refused to answer certain cross-interrogatories propounded to him as to the nature of the employment of appellee as attorney.

[6, 7] The suppression of a deposition is largely a matter of discretion with the trial court. The answers solicited by the cross-interrogatories were not material to appellant's defense. We have concluded that the

overruling of the motion to suppress the deposition does not present reversible error.

Finding no reversible error, the case is affirmed.

### On Motion for Rehearing.

, Appellant in its motion for rehearing stresses two points as presenting reversible error: First, the want of notice to appellant that appellee would suffer pecuniary loss on a failure to deliver the message; and, second, the refusal to suppress the deposition of Kleinman.

On the first point, appellant refers us to several cases as sustaining its position, among them, Telegraph Co. v. Farrington, 131 S. W. 609, and Telegraph Co. v. Barkley, 62 Tex. Civ. App. 573, 131 S. W. 849. In the first case, after the address, the message read:.

"Meet me tomorrow night at Le Ward. Get horse at Miller's. A. G. Farrington."

The agent receiving the message was not informed of the purpose of the telegram beyond what appeared upon its face. In that case Farrington sought to recover damages because he was forced to dispose of his cattle, which otherwise he would not have done, and which he did at a loss, had the party addressed in the telegram been present to assist him, taking with him another man and the horse indicated in the message. The court held that the petition in that character of case, having failed to allege any notice to the telegraph company, other than that given by the wording of the message, that negligent delay in its delivery would probably result in damages "of the nature sought to be recovered," the petition fails to state a cause of action.

In the second case the telegram reads:

"Buy horses. Ship at once. Other parties after them. Confidential. L. M. Barkley."

The addressee, Thomas, and the sender of the message, were buying horses for the market. The question was:

"Did the telegram upon its face give sufficient notice to fix upon either of appellants liability for the peculiar damages sought in this action?" that is, the loss of the contract with the seller of the horses.

The court said:

"We are not called upon to decide whether the notice embodied in the face of the message was sufficient to form the basis of a claim for some other kind of damages, but whether it warranted the giving of that which was obtained in the judgment;" that is, the loss of the contract or agreement.

The holding of the court was that the message did not advise the company of the existence of the contract or agreement the buyer had with the seller of the horses.

Here the wording of the message certainly informed the appellant that Gold was to be at Marfa to meet Kleinman on the following morning. Gold alleged that had he received the message he would have gone to Marfa. True, he further alleged that he would have been employed as an attorney in some matters of business. But, aside from the loss of business in which he might have been employed, the evidence of the witness Dale would sustain the amount found by the jury had Gold simply gone to Marfa though he might not have been employed in any matter of business. The amount found by the jury was evidently not intended to compensate Gold for any loss of business after reaching Marfa.

The jury evidently, in effect, found for the defendant company as to the loss sustained by reason of Gold not being employed as an attorney, and found for Gold on the evidence of Judge Dale the value of a trip to Marfa on a matter of business, less the probable cost. Looking at the case as it now appears, we cannot say that it presents reversible error on the first point stressed in the motion.

[8, 9] On the second point: It presents more a matter of ethics in the practice of law. If the evidence sought by the cross-interrogatories, and not answered, because so advised by Gold, was not material as we now view it, it certainly would not present reversible error on the ground alone that the witness refused to answer the cross-interrogatories on the advice of Gold. Appellate courts reverse on the ground of material errors, and not as a punishment, or to establish a precedent in a matter of morals or professional duty in the practice of law. We simply held that the answers solicited were not material, and that their suppression was largely a matter of discretion with the trial court. If the witness fails to answer a material question, on motion the deposition should be suppressed. Railway Co. v. Shirley, 54 Tex. 125; Railway Co. v. Green, 90 Tex. 257, 38 S. W. 31; Railway Co. v. Davis, 53 Tex. Civ. App. 547, 116 S. W. 423.

In the last case cited the court said:

"Such matters [suppressing deposition] are generally intrusted to the discretion of the trial court, and the rulings of that tribunal will not be revised on appeal, except when it is made to appear that this discretion has been abused."

The motion is overruled.